May it please the Court, Alon Levy appearing on behalf of the appellant KJ-Park. Below the trial court suffered from a fundamental misconception of both the inner workings of this admittedly complex commercial lease, but also of the entitlements afforded by the city and the way those two pieces of information worked together. On their motion for summary judgment, Match, of course, had the affirmative duty to set forth their right to relief with a showing of undisputed material facts for each portion or each element that they wished to prove up for their claim or to negate the claims of KJ-Park. And it appears that the trial court failed to hold the movement to that burden in evaluating the affirmative motion. And the effect of that was a judgment against KJ-Park, but more critically, the errors that occurred involved an absence of a showing of undisputed facts indicating that there was a right to terminate, that this commercial lease, like many, had a regular breach clause and that required notice and an opportunity to cure. Counsel, can I ask you a question? It seems that you have changed track from your arguments in district court. You're now arguing that the lease termination clause was never triggered because Ordinance 5358 is not applicable law under the plain language of the lease, but you didn't raise that theory before the district court. So I guess the question to you is, can we consider this argument at this stage? And if we can, why is that the case? Thank you, Your Honor. There are two reasons. Fundamentally, the issues before the court are purely legal, and so the court has discretion to do so. I don't disagree with the court's characterization of the focus below. However, the initial opposition papers, if you look at the first and second sections, they do lay out, albeit perhaps not as forcefully as one would like, the duties of match to lay out its claim affirmatively and to demonstrate why it had that right to terminate under the  So either under the forfeiture laws, which, of course, benefit or lean towards an absence of forfeiture, or based on the fact that the issues here are purely legal and the court is entitled to exercise its discretion to consider legal issues in the interests of justice, which certainly here that exists, because there does appear to have been a fundamental miscarriage here with respect to the lease terms. Was this put at all in front of the district court? Because it seemed like what was put in front of the district court was this vested rights theory, and that's what the district court spent a lot of time reviewing. So was the district court on notice of this other kind of antecedent point? The papers below, the opposition papers, as I indicated, were not as forceful as one would like in that, but they did lay out, again, in that initial section, at least in a cursory manner, that the match was required to make a showing on each element of its claim, one of which was the next. But did you explain why it didn't make that showing? I mean, it doesn't appear you were necessarily counsel below. I don't think, or at least didn't argue this issue in front of the district court. But at the same time, it's one thing to say they have the burden, it's another thing to say here's why they haven't met that burden. Was that ever put out there? It was not explained. As the court indicates, I was not counsel below. But the record evidence, which is we rely only, of course, on the record evidence, had all of the points that we raise in our briefing, including, most critically, the interpretation of the lease itself. I mean, one could maybe glean that, but was it ever actually argued? It certainly was not argued forcefully. The first section in the opposition papers does discuss the triggering, the delivery date and the triggering mechanism that was required, but again, certainly not as thoroughly and not with the force. No, I appreciate your candor on this. I mean, the other piece of it, of course, is that the district court, you know, asked at the hearing, if the vested rights issue is resolved against you, is there anything more to this? And I'm paraphrasing, but it's a fair interpretation of your client's position at the hearing that that would be it. We would argue that that is not a fair read. We indicated, if you look at the earlier section right before that exchange, the court does indicate that it's talking about K.J. Park's motion and not Match's motion. There is some confusion in the exchange itself, which is quoted by both parties here, but it does appear that counsel is that counsel for K.J. Park is talking about its own motion. That is, if it's KJ Park's affirmative motion for summary judgment, in that motion, if the vested rights issue is lost, then K.J. Park does not have a route to... Counsel, do you... Oh, go ahead. Go ahead. Counsel, do we have to get to the vested rights issue if we address your main argument now that you're making, which is that really 5358 is not applicable law? I mean, do we really have to get into the vested rights argument? You do not need to reach that argument, except, I suppose, with respect to K.J. Park's affirmative motion for judgment in its favor, but certainly with respect to the main thrust of the appeal, which deals with the obviously more harmful part for my client, the affirmative grant of relief to Match. So what are you asking for? Are you asking for summary judgment for you? Or are you claiming there's a triable issue based on this new theory that wasn't raised below? We have made both requests. We have requested a reversal with respect to K.J. Park's appeal, but clearly that is a less critical issue for us. The main thrust of our appeal is the relief to reverse Match's affirmative grant of summary judgment and judgment, because, of course, that terminates the case and does the most harm to my client. And I take it your basic point is that you delivered the base shell and core in accordance with applicable law as it existed, even if some people quibbled about what law was applicable by the time of the termination. It was clear it wasn't applicable law, or kind of give me the time frame there of what you have to say about applicable law. Yes. The applicable law term is somewhat ambiguous. It applies in different ways to both parties here. As we point out in our briefing, Match also has an obligation. Its obligation is to build out what I'll call the skeleton, right? Our obligation, my client's obligation, is to provide the skeleton of the building. That's the shell, core, and base. And the tenant, Match, is required to build it out, doing the tenant improvements. And so in both of those instances, the parties are obligated to comply with applicable law. Schedule 1 of the lease lays out in great detail what most of the laws would be, which are understandably construction laws. You build out the framing of the building, et cetera, in a particular manner. It is we contend the use of the building is not covered in that way. Certainly, delivery of the building in a manner that is usable cannot be done. Under the lease provisions, because the shell, core, and base is just that. It's the skeleton of a building. So the use could not have been contemplated by the lease. And that's why we have at Section — excuse me, Excerpts 856 and 879, the obligation on the tenant to do the tenant improvements and to comply with laws. So if this is true, why was your client in such substantial discussions with the city over whether this ordinance would apply? Because it seems that your position is this ordinance is not our problem at all. Nonetheless, you were actively negotiating with the city over that very issue. Yes. Our client is a much smaller entity. It very much wanted to save this lease and wanted to do whatever was necessary in order to make things right and make this a smooth transition for the tenant. Also, we can know that at this time there was a shift in the market. So the lease became much more valuable for the landlord than for the tenant. And so the landlord was attempting to discuss, and it did this from the very beginning, right? It did this as early as, I believe, 2016. It was talking with Mr. Late and Mr. Wright about the ordinance and whether or not it applied. I did wish to reserve 10 minutes for rebuttal, but, of course, I want to — Well, we'll make sure you have plenty of time. I guess I don't know that we're finished questioning you about the theory here. I mean, I have a few questions. One is, is it obvious that the Shell Basin core has nothing to do with whether the first floor is retail? I mean, I don't see anything in the record on this, but one might imagine that if there's going to be retail on the first floor, that might affect how the building is constructed. I suppose one could envision a scenario where it might. But there is no record evidence, and that's one of our arguments, is that at a minimum there's a disputed issue of fact. At a maximum, there's no showing at all as to why the core base or shell would violate the ordinance. The description of the — Is there expert — is there expert reports or testimony on this part of the case? There is, Mr. — there is an expert. That is part of our appeal as well. The expert opinion was excluded in full, but — and it deals mostly with the discussions, how the communications occur with the city with respect to each of these things, and what it means when the different individuals respond as they did. I guess what I'm trying to understand is, you know, we're being presented with a theory that — I'd just say for my part, I don't think was fully vetted below, at least in the briefing. And so I'm wondering, if you're right about this and we overlook the forfeiture, then what needs to happen in order for this to move forward? Is it ready to try, or is this now a whole new kind of issue for summary judgment, and there needs to be new fact and expert development on this issue? No. We would contend that this would be a reversal. There would be a denial of the summary judgment, and the matter would proceed to trial. These are the theories that were in the case before. And I did want to respond to the prior question about where we can find what was required to be done in the shell, core, and base, and that begins at Excerpt 882, which lays out what K.J. Park was required to do. But the trial would then be open to whatever type of attack your adversaries wish to make, and factually, that is — it looked to me like the base, shell, and core were fine, but they could attack that if they wished? They could. And they could attack the applicable law question? I mean, I take it your position is that the applicable law was the way you wanted from the beginning, and certainly by the time of the settlement. Is that fair? Or was it ever unapplicable and then reinstated as applicable? No, that's fair. The law was on the books since shortly after the ARULA was provided, which is the last discretionary act of the city. Then the ordinance came into play. It's discussed with the — with Mr. Late and Mr. Reich during — throughout the time that that core, base, and shell are being provided. They all say no problem. And eventually, when the — well, after the delivery date, and there's also a dispute about the delivery date, there's disputed evidence as to whether or not both items were delivered in October or whether that was — that only occurred in April, although our contention is that wherever that occurred, even if it's the part that — excuse me, the date that — that match concedes delivery occurred, the termination time period would still have run, right? Because the delivery date triggers — if it's late, if it's after March of 2019, then it triggers a 15-day window within which the tenant can exercise the right to terminate. And so taking the latest date that match indicates they received the notice of delivery, then that would be May 1, and they didn't — they did not terminate until May 30th. I guess I was not — I was confused by the vested rights theory, because I understand how you might argue that as to the city, to say, listen, you told us one thing, now you're telling us something else. You can't do that. I was not sure why match had to — was bound by that in some way, at least in the face of the city expressing uncertainty. Can you clarify that? And don't worry about the rebuttal time. We'll make sure you have a full opportunity. I appreciate that. Thank you. And I appreciate the question, because I do think that the trial court struggled with this as well. This is almost akin to an affirmative defense, right? Because the issue here is whether or not the core base and shell were delivered properly. And in that analysis, the question is, did it comply with applicable law? So the city has never stated that it did not comply with applicable law. And so the question is, why do we think that it may not have complied with applicable law? And so in doing so, that vested rights theory springs forth, because the vested rights theory is a critical part of the developer's tool bag. They rely on that vested rights theory in a great many, if not all. Is there a case law in which developers or landlords have asserted it as against tenants who are trying to break a lease? We have not found any case where that has occurred. However, our contention is that we are not directly asserting it against match. We're using it to demonstrate that there was compliance with the law, because if you have a vested right, the government agency What good is that to match? I mean, they're at the point where they are being told by the city, we don't know if this ordinance applies or not. They have a window in which they can terminate, and their position would be, you know, we don't want to trust either you or the city to get this right by us, and we're just going to get out of this. And the issue is that there wasn't actually a determination by the city, right? There is a lower-level employee who says, this might be an issue. Let me find out. He testifies That's Mr. Sahls. Mr. Sahls testifies that he needs to go talk to his supervisors. The supervisors are the individuals that have been talking with K.J. Park all along, telling them, this is fine. You're not required to have retail space on the bottom floor. I mean, isn't the better way to look at it that, in effect, match is in a position of saying or trying to prove that you're not in accordance with applicable law, and you're using that as a defense, or at least as a question of material fact? Yes. Yes, I would agree with that. That would be part of their burden, is to show, they must show, in order to say that we didn't comply with the delivery condition, that there's a violation of applicable law. And our contention is they did not do that. Isn't the point of this that they, again, assuming the applicable law is your burden, that this ordinance falls on you, isn't the point that they need to be in a position to be able to move to the next step and get their own certificates and permits? And if they're not able to do that, whether, then that is an issue for them. It could be an issue for them if, indeed, they were unable to get a permit. But there's no indication that they weren't able to get a permit. In fact, the resolution all the way as high as the city council itself occurs four days after the termination, and it occurs with no change to the core shell or base, which I would submit to the Court as a strong indication that that core shell and base was compliant. Because your language under landlord work is, to the extent necessary for a tenant to obtain a certificate of occupancy doesn't say for them to have obtained a certificate as of a given date. Correct. And we would go even further and indicate It is true that the city kind of pushed them off a little bit. It said, you know, well, maybe you shouldn't apply quite yet, but there's no time limit for the actual obtaining of that certificate. Correct. And the time limit was going to be exactly my next point. First of all, the entire clause is a substantial completion clause. It has wording built in for the idea that it may not be exactly perfect. In fact, if you look at the later clauses, the lease even indicates that there could be work being done concurrently by both landlord and tenant, and that's at 872. That portion both talks about a built-in flexibility as to the delivery date and also the possibility that you may have landlord and tenant working at the same time, even though it's after the delivery date. And that's because of that substantial completion clause. Is that referring, you know, usually you think of substantial completion as some part of the structure that's not yet complete. We don't really think of it as some uncertainty in the law that's getting resolved. I think that is fair, but I think it would apply in both instances. That is, I think it's fair to say that most likely what's contemplated there is you're fixing some things that weren't done quite right in the building, but I would contend that it's equally applicable if you're in this unusual scenario where you're talking about whether or not a law is applicable to the creation of the base shell and core. And that also goes to the question of the built-in flexibility on the delivery date. Okay. Well, we've kept you on the run. We'll put five minutes up for rebuttal. Thank you. I appreciate the Court's questions. Good morning. Good morning. Eileen Ridley, fully in Lardner on behalf of the defendants and respondents to the match group. I'm here with my colleague, Alan Ouellette. May it please the Court. And briefly, thank you to the Court for the flexibility regarding the schedule. I just wanted to take a moment regarding that. With regard to the discussion, I think it's important that, in fact, this new argument was not addressed in the Court below whatsoever. It wasn't addressed in the briefing. It wasn't addressed during the oral argument, which lasted an hour and 26 minutes. And having been there, I will say that the record, the transcript record, reflects the experience, which was the Court repeatedly asked if there were other grounds other than the vested theory rights theory that K.J. Park was asserting. Counsel, I think your friend on the other side has pretty much agreed with you that it was not at least forcefully addressed, probably not addressed at all. But they agree with you on that. Can you address, if we do, in fact, consider the argument, can you address the merits of that argument? Happy to do so. And for the record, we would say that the argument was waived. But having said that, and to address the argument itself, we think it misses the point and actually doesn't reflect what's actually in the record. To be clear, this lease was very expressed about what use could be made of this property. It was to be for general office use on all three floors. And if that were not enough, it also has a provision that specifically prohibits retail use. So the lease, as it is worded, is contrary to the ordinance. And the ordinance predates the lease, it predates K.J. Park's purchase of this property. And in fact, what happened was while the evidence shows that K.J. Park knew of the application of the ordinance to the lease, the prior owner informed them of it. And as a result, they informally went to the interim director of the planning department and got what the director himself, Mr. Late, says was just his opinion. Notwithstanding the fact that they were knowing of this ordinance and that it applied to the property, so much so that they go to the director to ask his opinion, if you read the ordinance, it itself says any variance requires counsel action. They never went so far as to say that they went so far as to get counsel action. They only got an informal e-mail. But their actions in inquiring of the department and after the issue was raised to match, continuing to deal with the department, and frankly, their city attorney, reflects the fact that they knew the ordinance was in fact applicable. But then the city actually issued the appropriate permits for the building under the terms that they were going to use it as a full office building. Well, the building permit said it was a commercial building. And Mr. Late was very clear in his testimony that the building permit had to do with the construction. It didn't deal with the use yet. But the reality is that the contract that K.J. Park entered into with match expressly stated what the use had to be multiple times, both in positive terms and in negative terms. Well, counsel, I guess I'm looking at the termination letter. And to me, it appears it expressly acknowledges that the final inspection approvals from the city of Palo Alto evidence that the base, the shell, and the core were in compliance with applicable law. That's a quote at ER 907. So if it was in compliance with applicable law, I guess, are you changing your position? No. No, Your Honor. It was to be in compliance with applicable law regarding construction. But it didn't deal with the applicable law and ordinances regarding use. Okay. But the ordinance, I guess you're saying that 5358, that that was applicable law with regards to the terms of your contract. That's what you're arguing, correct? I would argue that it's, yes, in the terms of our contract, but also in the terms with regard to the city. I mean, notably, the settlement agreement that ultimately resulted from the interactions between KJ Park and the city didn't say that this was compliant with the law. But what it did say was it was going to be considered to be a non-conforming use, an allowed non-conforming use. The implied statement there is that this ordinance was applicable to the property. Can you point me to, I want to make sure I understand your argument. Can you point me to the lease section that you indicate indicates that the building was to have a specific use such that this ordinance somehow changed that? Yes. If you take a look at the lease at match 0000... Give me an ER number, counsel. I apologize. I have the bates of match 4251. I will provide the ER in a moment. At some point, that would be great. Okay. But I would note that it literally says it has to be in compliance with applicable law such that match could obtain and retain a certificate of occupancy or its legal equivalent for the premises for general office use. And then the lease itself also states that retail use is prohibited. Okay. But then the part that you just read, it is in order to be able to obtain and retain a certificate of occupancy. No formal application was made. So isn't that, in effect, a question of fact now as to whether you could have gotten that certificate had you pursued it? And the settlement agreement potentially would be relevant among other things. But to the extent that we are looking at that term as of the date of termination, isn't it obviously sort of forward looking? I would disagree with that characterization. We actually, match actually made an application. We went to the city to get the application for the permit and the occupancy. It was, undisputed facts, stalled as a result of this dispute. And beyond that, we again requested, hey, should we proceed? And Mr. Sauls inquired of not only Mr. Late, but the city attorney. And the response back was, no, hold up until this is resolved. We could not get a permit. The city was not going to process this. We attempted twice, undisputedly, and yet could not get through the process because of this issue. But there is no date for that in, that is, I don't know about California bureaucracy, but getting permits from any building place is frequently time, you know, requires time. So it is that you could get it, not that you had gotten it. Is that fair? At the time, I don't know that I would say that was fair. It was unclear that we would ever get it. There was no. I'm saying what the contract means, that the contract says you could get it, not that you had gotten it. But the contract also has a delivery date, also undisputed, which the lower court acknowledged. And the delivery date was March 1, 2019. And the delivery condition specifically was that the property would be in compliance with applicable law such that we could get and retain a certificate of occupancy. That did not happen. And you just said the March date. How did we get from March to May 15th? Or do you have any disagreement about May 15th being the relevant date when you then made the termination on May 30th? We made the termination on May 30th. We actually gave the KJ Park the chance, literally two months, to get this resolved in, frankly, the city. At some time, practically speaking, at some point, if you took KJ Park's argument, essentially we have a lease where we could potentially never get this property but somehow have to pay for it for 10 years. But, then you sort of hit right at my next point. Conversely, had they gotten the settlement agreement not on June 4th but on May 14th, would we be here at all? Probably not. But they didn't. Okay. And they knew about this issue before the lease. They didn't tell us about the issue. And they didn't take it upon themselves to do what was required, even in the plain language of the ordinance. Okay. But, I mean, granted, everybody is entitled to stand on their rights, but from your last answer, this could have been worked out over a period of a couple of years. Of other two things. One is your answer that it would have implies that the settlement agreement was, in fact, good enough to allay your concerns. Well, at least the settlement agreement identified that the property would be considered a legal non-conforming use going forward. So we had something official and, frankly, not only official from the settlement agreement, but we had an actual council action. Yes. They had a six to one vote a couple of days earlier. Right. Which resulted in the settlement agreement. So we now have a council action. Right? But in effect, that may be part of the argument, is does it say we're now giving you grace to go forward or are we agreeing that you were right all along, you had the right to do it? I believe it's saying we're giving you the grace to go forward. It's forward looking. It specifically says we're seeing this as a legal non-conforming use. It's a non-conforming use because the prior use did not comply with the ordinance. And it is doing exactly what the ordinance required. It has council action indicating why this particular property doesn't have to comply with the terms of the ordinance. So if you had this council action by March 15th, would this have been fine? You know, it's probably, but it didn't happen. No, I understand that. I mean, curiously, with all the, it seems that maybe your client just wanted to get out of the lease anyway, because the city council acts a matter of days later. And at that point, obviously, the parties could have said, you know, OK, it's late, but we're going to take the building. I think that's an incorrect perception. My client waited literally months and no action was happening. There was no indication to us that there was actually constructive or even light. No, I appreciate that. It's just that after the city council acted, you obviously had the ability to say, OK, glad this is now fixed and let's get in there. I understand. But at that point, now we have a history of learning that the city has not told us about an ordinance that they knew about, had never informed us of its communications with the city. We now have a different issue with regard to how this landlord is treating us as well, including its failure to comply with the terms of the lease. So can I just, can we just go back to the lease? I mean, the other side is saying, look, this really doesn't have anything to do with the base shell and the core. Do you agree with that or do you dispute that? I dispute that. OK, so what would be the basis for disputing it? Because the specific delivery condition for the base shell and core was that it had to be in the condition where we could get a tenant of occupancy and retain it. That did not happen. OK, but how does the ordinance affect the construction or the configuration of the base shell and core? Is there anything that would change? It would change because the use would be permitted. In other words, in order it's not just give me the base shell and core. I mean, that argument essentially excises numerous references within the lease itself about this being a, to be used as a office building on all three floors and the prohibition, the express prohibition with regard to retail. So clearly the intent of the lease was that the base shell and core would be delivered so that could be acted upon, i.e., that the use would comply with what the lease anticipated, which was... Finish your thought, yeah. Which was use and occupancy as an office building on all three floors. I guess the question would be, so if that was not provided, it would seem to breach the contract in some way because you're right that the contract does say in this there should be no retail. The issue here is just does it trigger the termination clause, right? And the termination clause is, I don't know that it should be read to say any time there's a breach of the contract prior to delivery we can terminate. It's a little more specific than that. I think it does trigger the termination clause because it's not just a breach of the contract. The property wasn't delivered in the condition that it was contemplated to be used. We were not getting the benefit of the deal. That has nothing to do necessarily with the physical base shell or core. It's more the legal uncertainty over the permitted use and is that the issue? Well, it does have to do with the base shell and core because it was to be delivered in a way where we could use and build out according to the use contemplated. We clearly could not, notwithstanding our attempts multiple times with the city to be able to do so. And the reason why we couldn't do so is because the owner failed to deliver the property as required on March 1, 2019, ready for us to be able to occupy it as a general office building. But the in a condition is our dispute between a physical condition, that is, there's nothing about the building that made it impossible to have it as an office building and a legal condition where you're saying that we can't use the property as a general office building. We might never be able to use it the way we want because we would have to put in retail and we don't want to do that. That's exactly right.  This is not a lease that says we'll give you a base shell and core and use it as you wish. Well, but that takes us back to in accordance with applicable law and that's where the dispute is that did the ordinance, is the proper interpretation of the ordinance that it would have forbidden it or is that what was disputed and ultimately resolved in favor of K.J. Park's view of it? It was never resolved in favor of K.J. Park's view of it. What happened was actually the ordinance was complied with if you take a look at it and actual counsel action took place to vary the ordinance to allow this to be a non-conforming legal non-conforming use going forward. So the actual terms of the ordinance were applied and it went through the actual counsel action required. The additional item, their argument is that it was in accordance with applicable law all along. That's why the city issued them the building permit and took half a million dollars in development fees. But even Mr. Late testified that that's not a correct analysis because in fact it's undisputed that the building was for the actual construction of the building. It didn't deal with the use. They still had to comply with all ordinances regarding use. And the concept of use in the lease is specifically addressed. It was specifically contemplated by the parties. What parts of the lease, what provisions of the lease do you think are the key ones for this piece of your argument? I think the key provisions are the delivery date, the delivery condition, and the termination clause. Okay. So we're obviously talking about this whole argument that the district court didn't address. So I gather you were trial counsel also? Yes. Okay. So from your standpoint, if this issue were to be resolved, is there more discovery factor expert that needs to be done? No. I think it was all before the lower court as well as the appellate court here. Was there expert? When you say that, what do you mean? I mean, the lease is before everybody. But is there other testimony on what some of these things mean?  You've been presented with all the testimony. There was no expert with regard to this particular issue or, for that matter, the question of whether or not the construction alone was something that could be considered separate from the use. In fact, it was understood during the litigation in the lower court that that was part and part of the lease. It was always contemplated to have that use. Essentially, I would argue that appellant's argument is trying to excise that part from the lease when, in fact, it was a central tenet of it. I'm just trying to more figure out what needs to be, if this argument is going to be considered, there's a question as to whether we would consider it or there's a question as to whether the district court would consider it, and if the latter, what more, if anything, would need to be done or presented for somebody to be able to evaluate this? And our position is it's been waived, but if it weren't waived, that all of the evidence that's needed to apply it, it was before the lower court and this Court, and it ultimately results in the same result. No, but that's probably because you view the lease as favoring you just as a matter of law on this point. But if the view is that's not necessarily correct, I'm not saying that's not taking position on that. I'm just saying if one were to say that, that this lease is ambiguous and we don't know what it means and who had the obligation as to this particular ordinance, would there need to be more discovery factor expert to help evaluate that question? I don't see more discovery, and I don't know that there would be an expert because the expert would be opining upon the application of law, which the trier of fact, again, this was a bench trial, so the trier of fact was the lower court itself, and would be, again. We haven't asked about the vested rights piece, but we're taking you over, but I'm going to ask you about that just because we're here. What is your response on that? Because obviously this was the whole basis for the district court's ruling. Agreed. Two things about the vested rights. One is, there is no case law at all that applies this concept of vested rights to a private dispute between nongovernmental agencies. And the lower court recognized that, and if you look at all of the authorities being cited, it's all private parties vis-a-vis government actors and what they did or didn't do. So none of the authorities suggests or supports the idea of the application of a vested right to a private party. And it wasn't just for affirmative defenses, as our opponents argued. They brought suit on this concept against us. They waited four years and brought suit against us on this concept. But the reality is that the dispute they had was really with the city. It was not with regard to any control of match or any of match's actions. And to apply the vested rights theory here would be, it would be new law. It would be never seen before and, frankly, would suggest that a party that had no control over governmental actions somehow was liable for a dispute between yet another party and that governmental entity. I guess there's a suggestion that it's maybe more like an affirmative defense. They brought suit. They brought suit on this theory. So it's not just an affirmative defense. This is their active theory for bringing their lawsuit. And I will note that in the briefing, our opponents suggest that the lower court failed to provide consideration of the burdens of the summary judgment and literally just ruled against them on their affirmative claims on vested rights and just applied it to ours. If you take a look at the order, and the order is, you know, at ER 027, Volume 1, it goes for pages. It has nine pages, pages 2 through 11 of all of the undisputed facts. It then deals with their affirmative claims. It then deals with affirmative defenses. And then it deals with our motion. And when it talks about our motion, it talks about what evidence we presented and then talks about that K.J. Park failed to dispute or bring evidence to dispute those evidences or those that position and the evidence presented by match. So clearly the court went through the burdens, weighed the evidence, and made a ruling. It wasn't just an automatic, unthinking ruling. And so we believe the vested rights argument doesn't support affirmative claims and certainly doesn't support an affirmative defense. If it was an affirmative defense, it would be as to the city, not to match as a private party. What's actually at stake monetarily here? So how much are we talking about in terms of your counterclaim and how much in terms of what they're asking? Well, the counterclaim was $300,000 plus attorney's fees, which was about a million. They were asking for $6.9 million because their theory is that we would be on the hook for the entire time frame of the lease, notwithstanding the fact that they couldn't establish during the delivery date the condition of the property, which was contemplated by the lease, i.e., the use as a general office on all three floors. And conversely, so your side, the counterclaim, that's what you're referring to, is the $300,000 plus the million. And they currently are asking for what was like seven and a half years of the lease. That's exactly right. Mitigation of damages, have they released it to anybody else? Is the building there? They sold the property for a substantial profit. That would just go to damages. But on the other hand, if you had worked it out within that month or two period, then you would both be in business. You know, again, they had the opportunity to follow the procedures they could have to not have this issue at all. They knew of the ordinance at the time they purchased the property. They nevertheless still entered into the lease with us fully understanding that the contemplation was the use as an office building and specifically prohibiting retail. Yet they did nothing to make sure that ordinance didn't falter that with the city. Well, I suppose that's the disputed fact on the make sure the dealings with late and so forth, and you each have evidence on that point, that in the end the city dragged its feet but never took any steps to stop the building from being built under the terms that the building people had presented. K.J. Park presented it that this was going to be a full office building and was given permission to go forward. To construct, but not with regard to use, as Mr. Late testified. And that's not disputed. And really, we don't have any dispute with the fact that K.J. Park did nothing to follow the lease requirements to get a council action to get a variance until the 13th hour, notwithstanding its knowledge at the time it entered the lease. Is all use? I mean, part of the issue in this case, then, if we're into this argument, is who bears the risk under the contract of legal uncertainty surrounding use? And your position, obviously, is that as to this type of use, it's on them. Their position, as I understood from the briefs, is, you know, we can't be sort of the property, so are there some uses, issues that are on them and some that are on you? And how does one figure that out? I think the answer is that the use that's pertinent here is the use as a general office building. That's on them. That's what literally was required with regard to the delivery date and delivery condition. If there are other uses that came in the future, that might have an issue for both parties. But they are not absolved of having to provide the property as it promised to do so in the lease. You know, counsel, several times you've quoted, I'm not disputing that it's a good quote, of Late saying that the — it wasn't as to use, but there are other things in the record saying that they had an — that Late confirmed they had an entitlement to build the office building. It was always understood the building would be an office building. What is your quote for that? It's not an office building. It's only — it doesn't touch on use at all. I mean, you've made very forceful statements of that a couple of times, and it's very useful, but can you give me a site and source? I am looking for it. It was reflected in the court's own order, which is found at ER 027, Volume 1, and I am looking for the site as we speak. If I may, it's on page 3 of that order, and the quote is as follows. This is from the order. Jonathan Late, the city's current director of planning and development services, testified in deposition that the RLUA documented in the city's findings that the proposed project met applicable standards in the zoning code, quote, allows offices to be built in this building, close quote, and, quote, authorizes the offices to be located at the building, close quote, while the, quote, land uses that go into the building would be the subject to permitted land uses of the zoning code, close quote. So that covers what you had paraphrased earlier, and the RLUA was something that the city had granted earlier, was it not, in May of 26, or even earlier than 16, I'm sorry, 2016, as opposed to what went on in 2017 when MnCOF is dealing with late and so on. Okay. But if I want to thrash this out, I would go to the opinion, and then presumably the judge has citations in that opinion. The judge does. I can give them to you. I can do it. Okay. That's fine. Appreciate it. Thank you. Thank you. Judge Mendoza, anything else from you? Okay. Thank you very much. Thank you, Your Honor. Thank you. Thank you, Your Honor, for allowing some rebuttal. I'll try to be brief, and I apologize, I will jump around a little bit. One rather, I think, critical point that has come up a couple of times is this distinction between the construction of the shell base and core and the use of the building. And counsel's comment was that the lease delegates to the landlord, to KJ Park, the requirement for ensuring the proper use. And I want to read to the court from excerpts of record at page 856. It's section 24.1, and this is roughly the middle of the paragraph. And it says, at its sole cost and expense, tenant shall promptly comply with any applicable laws which relate to, paren one, tenant's use of the premises. So that, at a bare minimum, creates confusion. I would submit to the court it actually creates clarity that this, and this is the reason why in our briefing we said this actually matches responsibility, and it goes to the court's question in the beginning. Why were we doing this to begin with? Well, because this lease was very important to my client. So we were trying to get this done no matter what. But it is Match's obligation to comply with use restrictions. But does this mean all use restrictions, or is that the question? I mean, that's what we're trying to decide here. Very fair. And I want to be clear because that paragraph does go on to create a bit of ambiguity. It says, and I don't have that part highlighted, but I'll try to paraphrase, it does envision that there could be some things connected to the core base and shell. I think it's a fair read, at least, that that does go on to say that. But that goes to the court's earlier questions about what is the construction problem here? What is the — and the court in my questioning asked me, could there be a scenario where the ordinance could apply or an ordinance could apply? I'm sorry if I'm getting the question not quite right. I struggled as I was preparing to come up with an example because I want to be clear with the court that I am not saying that it's impossible, right? Here's a somewhat ridiculous example, but it makes the point. Let's say, ridiculously, that the landlord created a shell base and core that had no entrances, right? That presumably would violate a number of use restrictions that any city or county would have, whether it's handicap access, et cetera, et cetera, et cetera. That would be an instance where there was a clear violation and a use application could apply. But that isn't what we have here. We have a tremendous amount of ambiguity about whether or not there's any violation here. We've got multiple Mr. Late, Mr. Wright, essentially every single person that — in the city that the developer goes to. And again, the developers rely on this information. That's the reason that the city has all these staff people. They rely on this and they spend, as K.J. pointed out, a tremendous amount of time and resources on that because they have to in order to make commercial space available. And so this is a critically important part of many commercial leases in this area. But on its face, that provision envisions the use restriction — compliance with the use restrictions falling to match and not to match. Right. I mean, I guess what match is saying, you know, we're not just talking about any general use restriction here. We're talking about, like, the basic purpose for which this building can be used. And there's a whole provision in the agreement that says it's not to have retail. So if we're going to call that any use restriction, then there's basically — then really every use is on the tenant. And I think Matt's position is this is kind of a big deal use item that really is on you because otherwise we just can't even use the building for the purpose that we're trying to use it for. Yes. And there were a number of places in the argument and in briefing where I think that match went to essentially a frustration of purpose argument. And I just want to draw the Court's attention to the fact that frustration of purpose was one of the issues that — or, excuse me, one of the — I think it was affirmative defense to which match brought summary judgment, but that was denied. So that aspect isn't there. The issue here is that there is no violation that the city ever indicated was present. Right? So we don't have that clear indication. We don't have that scenario where there are no doors on the bottom floor. The counsel repeatedly, and again in briefing and here, talked about the stalled or wait for the permit. And all of that goes to the information that was laid out in the first argument. There isn't a time limit on this termination clause. Now, does that mean it's never? I think the Court asked that to counsel. It does not. Of course, California is going to read in a reasonableness term there. There's also the covenant of good faith and fair dealing. But the point is, all of those are fact-intensive issues, and it would be — they would have to show that there was an unreasonable delay. I submit to the Court, I think the judge indicated that for his area, this might not be the slowest permit. I would submit that for California, this is a very quick turnaround. A couple of months is actually quite fast. And the reason that it was so quick was all of the staff were on board. All of the staff — no one in the staff said, this doesn't — this is a violation. We can't let this go forward. No one said that. They said, let's wait. Let's see what we're doing with this. That's very different. And again, there was a — there was a different way to go. There was a breach and cure provision, if that was really what they wanted to do. But as I think the Court teased out in the prior questioning, that wasn't really the point of Match's efforts. They didn't want this cured. They wanted out of the lease. Anything else you want to add? We're into borrowed time here, but we want to make sure we have —  I'll just make one final point, and then I'll close. It's a fairly brief one, but it just has to do with whether or not the council action was necessary in order to have the vested rights accrue. And I was just going to point to the city of West Holland. That's a Cal Supreme Court decision. And it's quite clear that the vested rights issue supersedes. It's outside of the — whatever ordinance or provision you're talking about, because the vested rights issue goes to — it comes from the underlying principle of a taking. And it says that government cannot do these certain things. So irrespective of what the provisions of the ordinance or provision say, if there's a vested right, that supersedes it. Unless the Court has questions, I'll close very briefly.  We thank both counsel for the helpful briefing and argument. This case is submitted. Thank you, Your Honor. We'll invite counsel for the second case to come up and get ready. I've asked our court staff to bring in our students, so we'll have them come in as well.
judges: Boggs, BRESS, MENDOZA